**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **SAMUEL L. ZAMAGNI,** | § | |
| **TDCJ No. 02165502,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **V.** | § | **W-20-CV-1003-ADA** |
| | § | |
| **BOBBY LUMPKIN, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## ORDER

Before the Court are Petitioner Samuel L. Zamagni's pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), Respondent's Response (ECF No. 7), and Petitioner's Rebuttal (ECF No. 8). Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner's federal habeas corpus petition should be denied under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d).

## I.  Background

In March 2017, Petitioner was charged by indictment with one count of driving while intoxicated—third or more. Petitioner's indictment included two felony enhancement paragraphs: one for a June 2002 conviction for possession of a controlled substance and one for a November 2004 conviction for possession of a controlled substance (ECF No. 6-41 at 109-10.) On October 4, 2017, a jury convicted Petitioner of the charge, Petitioner

1

pleaded true to both enhancement paragraphs, and the jury sentenced Petitioner to eighty years imprisonment. *State v. Zamagni*, No. 16214 (29th Dist. Ct., Palo Pinto Cnty., Tex. Oct. 4, 2017). (ECF No. 6-41 at 111-13.) The following is a summary of the factual allegations against Petitioner.[1]

A Texas Department of Public Safety (DPS) Trooper stopped Petitioner for speeding around 10:30 a.m. on December 24, 2016. The Trooper's in-car radar equipment indicated that Petitioner was driving eighty miles per hour in a seventy-mile-per-hour zone. After the Trooper initiated the stop and opened Petitioner's passenger door, he smelled alcohol coming from the vehicle.

The Trooper administered several Standardized Field Sobriety Tests (SFSTs), and based on Petitioner's performance on the SFSTs, obtained a warrant to draw Petitioner's blood at 1 p.m. The blood draw showed that Petitioner had a blood alcohol concentration of 0.206 grams of alcohol per 100 milliliters of blood.

At trial, Petitioner stipulated he was the same Samuel Leo Zamagni who was previously convicted of driving while intoxicated twice: once on July 10, 2015, in Denton County, and once on January 23, 2015, in Tarrant County. After finding Petitioner guilty, the jury heard evidence pertaining to his punishment. Petitioner pleaded true to the two felony enhancements and stipulated to the State's evidence of nine prior criminal convictions—driving with a suspended license (1), driving while intoxicated (4), and

---

[1] This is a summary of the factual background provided in the brief Petitioner's counsel filed on appeal.

possession of a controlled substance (4)—and three deferred adjudications. (ECF No. 6-4 at 5-9.)

Petitioner's appointed appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 744 (1967). (ECF No. 6-4). Petitioner filed a pro se response brief, arguing (1) the DPS Trooper did not have probable cause to stop and search Petitioner; (2) the State violated *Brady* by withholding the physical radar from the defense; (3) there were numerous trial court errors rending his trial unfair; (4) the prosecutor engaged in improper voir dire; (5) video evidence contradicts the DPS Trooper's testimony; (6) his trial counsel provided ineffective assistance; and (7) his eighty year sentence of imprisonment was cruel and unusual punishment. (ECF No. 6-5). Petitioner's conviction was affirmed on August 9, 2018. *Zamagni v. State*, No. 11-17-00304-CR, 2018 WL 3763762 (Tex. Ct. App.—Eastland Aug. 9, 2018, pet. ref'd). On January 16, 2019, the Texas Court of Criminal Appeals (TCCA) refused Petitioner's Petition for Discretionary Review (PDR). *Zamagni v. State*, No. PD-0910-18 (Tex. Crim. App. Jan. 16, 2019). (ECF No. 6-10.) Petitioner did not file a petition for a writ of certiorari to the United States Supreme Court. (ECF No. 1 at 3.)

On June 15, 2020, Petitioner filed a pro se state habeas corpus application, listing the following twenty grounds of relief:

1. The State violated Texas Code of Criminal Procedure article 38.23 and the United States Constitution by admitting evidence procured by the illegal search and seizure of Petitioner's vehicle.

2. The State failed to disclosure favorable, material evidence to the defense regarding the DPS Trooper's radar.

3. The trial court violated Petitioner's right to due process by denying his motion for a continuance.

4. The trial court violated Petitioner's right to a fair trial by allowing the State to ask improper commitment questions during voir dire.

5. The trial court permitted the State to engage in prosecutorial misconduct during voir dire, violating Petitioner's right to a fair trial.

6. Petitioner's right to a fair trial was violated by the State's excessive mentions of Petitioner's prior convictions during voir dire, causing undue prejudice.

7. A biased juror was seated on the jury, denying Petitioner a fair trial.

8. The trial court violated Texas Code of Criminal Procedure article 38.05 by discussing the presentation of evidence with the prosecutor.

9. The trial court erred by allowing the State to use Petitioner's stipulation to prior convictions for driving while intoxicated.

10. The trial court erred by overruling a defense objection after the witness had already answered the objected-to question.

11. The State failed to prove their case by not providing sufficient proof that the Trooper's radar showed Petitioner was speeding.

12. The trial court erred by allowing the use of Petitioner's prior convictions into the jury instructions.

13. Petitioner's trial counsel provided ineffective assistance when counsel was unprepared for the start of trial.

14. Petitioner's trial counsel provided ineffective assistance when counsel failed to investigate the case and then failed to suppress illegally-obtained evidence.

15. Petitioner's trial counsel provided ineffective assistance when counsel failed to request any information regarding the radar used by the DPS Trooper.

16. Petitioner's trial counsel provided ineffective assistance when counsel failed to object to the comment made during the prejudiced juror during voir dire.

17. Petitioner's trial counsel provided ineffective assistance when counsel failed to object to the State's repeated mention of his prior convictions.

4

18. Petitioner's trial counsel provided ineffective assistance when counsel effectively admitted to Petitioner's guilt during trial.

19. The totality of trial counsel's errors constitutes ineffective assistance of counsel.

20. Petitioner's appellate counsel provided ineffective assistance by filing an *Anders* brief.

(ECF No. 6-41 at 3-46.) On January 28, 2020, the state habeas court recommended denying Petitioner's application. (*Id.* at 129.) On March 4, 2020, the TCCA denied Petitioner's application without written order on the findings of the trial court without hearing and on the court's independent review of the record. *Ex parte Zamagni*, No. WR-90,577-01 (Tex. Crim. App. Mar. 4, 2020). (ECF No. 6-34.)

On March 9, 2020, Petitioner executed his federal habeas petition, listing the following grounds of relief:

1. A biased juror was seated on Petitioner's jury, denying him a fair trial.

2. The State asked improper commitment questions during voir dire, which influenced potential jurors into committed opinions on the judgment and abilities of the police.

3. Trial counsel provided ineffective assistance by telling the jury during closing argument "Mr. Zamagni was probably speeding and didn't know it."

4. The trial court abused its discretion in denying Petitioner's motion for continuance; by not knowing the law; and by allowing the prejudicial use of Petitioner's prior convictions during trial.

5. Petitioner's appellate counsel provided ineffective assistance when counsel filed an *Anders* brief on direct appeal.

(ECF No. 1.) On December 22, 2020, Respondent filed his response (ECF No. 7) to which Petitioner filed a rebuttal on January 14, 2021 (ECF No. 8).

## **II. Standard of Review**

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. *See* 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This demanding standard stops just short of imposing a complete bar on federal court re-litigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness always should be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 409 (2000)). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Richter*, 562 U.S. at 102. A petitioner must show that the state court's decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

6

correctness of the state court's decision." *Richter*, 562 U.S. at 101 (citation omitted). As a result, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011). "'If this standard is difficult to meet—and it is—that is because it was meant to be.'" *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

### III. Analysis

1. Juror Bias (claim 1)

In his first claim for relief, Petitioner argues a biased juror sat on his jury and thus his trial was not fair. For support, Petitioner points to the following exchange, which occurred when the prosecutor was explaining the sentencing range for a habitual offender during voir dire:

> PROSECUTOR: Is everybody following me when I say that? We have to prove to you not only that there were two convictions but that they happened in a consecutive manner like that; that there were two separate trips to prison before the case for which you found the defendant guilty happened.
>
> Then it's a habitual offender range. And that's anywhere from 25 to 99 or life as a range of punishment. And I understand that's a big jump, but that's what the law in Texas provides for habitual offenders in this state.
>
> So I'm going to ask the same question again. If the State proved that to you beyond a reasonable doubt, that there were two consecutive trips before the offense for which you convicted the defendant, and you believed beyond a reasonable doubt that those convictions occurred and that this

defendant was the one convicted of those offenses, could you then consider the habitual offender range of 25 to 99 or life?

Mr. Jeter?

VENIREPERSON JETER: Is that what's happened here? He's already been proven guilty –

MS. BURNETT: I can't -- we can't talk about specifics here. I can only tell you that if the law -- the law provides it. If the State proves those facts to you, that would be your punishment range.

VENIREPERSON JETER: Apparently, that's the way we're headed, so, yes, ma'am.

(ECF No. 6-19 at 134-35.) Mr. Jeter sat on Petitioner's jury. Petitioner argues that his statement "Apparently, that's the way we're headed" showed Mr. Jeter already believed, prior to trial, that Petitioner was guilty and thus the trial court erred by not further questioning Mr. Jeter and not offering "curative instructions." (ECF No. 1 at 10.)

The issue of juror bias is a factual finding. *Virgil v. Dretke*, 446 F.3d 598, 610 n.52 (5th Cir. 2006) (citing *Patton v. Yount*, 467 U.S. 1025 (1984)). Under the AEDPA, this Court can only overturn the factual findings of the state court if Petitioner rebuts the presumption of correctness "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). During the portion of voir dire passage at issue, the State is questioning Mr. Jeter on whether he will accept the habitual offender sentencing range if the State meets its burden of proof. Mr. Jeter inquires as to the application of the State's hypothetical to Petitioner's case and the prosecutor states she cannot discuss facts about the case. Mr. Jeter then responds, "Apparently, that's where we headed," which Petitioner argues shows Mr. Jeter believes Petitioner is guilty of the charged offense. At most, however,

Mr. Jeter's statement suggests he believes the State's trial strategy involves proving Petitioner had two prior felony offenses. In the end, Petitioner pleaded true to the felony enhancement paragraphs, so Mr. Jeter's belief on this point was immaterial. Petitioner has failed to rebut the state court's factual findings that there was no juror bias with clear and convincing evidence. This claim is denied.

2. Prosecutorial Error (claim 2)

In his second ground for relief, Petitioner argues the prosecutor violated his due process rights by asking improper commitment questions during voir dire. He also argues that the prosecutor presented "false case law" to persuade the trial judge to admit evidence of two of Petitioner's prior felony convictions for driving while intoxicated.

The appropriate standard of review for a claim of prosecutorial error on a writ of habeas corpus is "'the narrow one of due process.'" *Darden v Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). The relevant question is whether the prosecutor's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643; *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (1985). "Although the asserted prosecutorial misconduct may have made the defendant's trial less than 'perfect', that imperfection must have rendered the trial 'unfair' in order to be 'constitutional error.'" *Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988) (quoting *Darden*, 477 U.S. at 181). To violate the defendant's right to due process, the prosecutor's misconduct must be persistent and pronounced, or the evidence of guilt so insubstantial that the conviction would not have occurred but for the improper remarks. *Geiger v. Cain*, 540 F.3d 303, 308 (5th Cir. 2008).

The test to determine whether a trial error makes a trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted. *Id.*

Regarding the allegedly improper commitment questions, Petitioner points to two voir dire passages. In the first passage, the prosecutor asks the venire panel whether a police officer who has "done hundreds of DWI arrests in their career" would have "a little better sense of judgment . . . than you as to when somebody has become impaired?" Two panelists agree, and then the prosecutor has the following exchange with Venireperson Johnson:

> MS. BURNETT: Okay. I know you've spent quite a few years in law enforcement. Do you feel like, as the years go on, you got better at spotting an intoxicated driver even at a lower [blood alcohol] level?
>
> VENIREPERSON JOHNSON: Yes, ma'am.
>
> MS. BURNETT: Pretty easy to spot those ones who are holding on to the side of the truck and can't walk, right?
>
> VENIREPERSON JOHNSON: Yes, ma'am.
>
> MS. BURNETT: But to -- to evaluate on the side of the road and make sure that the rest of us are safe from that .08 or even .07 driver. But that's still a danger, something you acquire and -- and hone your skills on over the years, would you agree?
>
> VENIREPERSON JOHNSON: Yes, ma'am

(ECF No. 6-19 at 55-56.) In the second passage, the prosecutor is telling the venire panel that in a small county such as Palo Pinto, there is often only one police officer in the patrol car during a traffic stop. The prosecutor then has the following exchange with Venirepersons Johnson and Randall:

MS. BURNETT: . . . And that may just be that one officer. Because much of the time, Mr. Johnson, isn't it true, especially -- well, you worked for the sheriff's office, I mean, y'all might have maybe three people on patrol, and each of y'all might be at opposite ends of the county?

VENIREPERSON JOHNSON: Yes, ma'am.

MS. BURNETT: Okay. So you might not ever have an officer show up to back you up on a stop, right?

VENIREPERSON JOHNSON: No, ma'am.

MS. BURNETT: Okay. And yet you're able to develop probable cause for an arrest based on your own observations and judgments, correct?

VENIREPERSON JOHNSON: Yes, ma'am.

MS. BURNETT: Okay. Ms. Randall, you know, your husband, many times, may make stops and not have any backup, right?

VENIREPERSON RANDALL: Right.

MS. BURNETT: And doesn't have another person in the car with him, correct?

VENIREPERSON RANDALL: Correct.

(*Id.* at 67-69.) Petitioner argues that these questions committed Mr. Johnson and the rest of the venire panel to a view that police officers were credible and trustworthy. Even assuming the prosecutor's questions were improper commitment questions, Petitioner has not shown that they rendered the trial fundamentally unfair. The evidence of Petitioner's guilt was substantial—he was caught speeding and a blood draw taken several hours after the traffic stop showed his blood alcohol level was more than two-and-a-half times over the legal limit.[2]

---

[2] In Texas, "intoxicated" is defined as, *inter alia*, having a blood alcohol concentration of 0.08 or more. TEX. PENAL CODE ANN. § 49.01(2)(B).

Petitioner further argues that the prosecutor used "false case law" to convince the judge to permit the prejudicial use of of Petitioner's prior felony convictions during the guilt/innocence phase of the trial. In his rebuttal, Petitioner explicitly points to a passage at the beginning of trial where the trial court and the prosecutors are discussing Petitioner's prior DWI convictions. Contrary to what Petitioner argues, the trial court did not allow the State to offer evidence in support of Petitioner's prior DWI convictions. Rather, following the holding in *Tamez v. State*, 11 S.W.3d 198, 202-203 (Tex. Crim. App. 2000), the trial court required the State and the Defense to submit a written agreement stipulating to the prior felonies, which then prohibited the State from referencing those felonies in their case-in-chief. (ECF No. 6-20 at 13-20.)

Accordingly, Petitioner has failed to rebut with clear and convincing evidence the presumption of correctness given to the state habeas court's findings of fact. As a result, this claim is denied.

3. Ineffective Assistance of Counsel (claims 3, 5)

*a. Ineffective Assistance of Trial Counsel.* In his third claim for relief, Petitioner argues his trial counsel provided ineffective assistance when counsel (1) said to the jury during closing arguments "Mr. Zamagni had oversized tires and was probably speeding and didn't know it"; (2) failed to challenge the Trooper's opening of Petitioner's car door without consent as a violation of his Fourth Amendment rights; (3) filed motions to suppress evidence too late, i.e. the Friday before the start of trial on Monday; (4) failed to strike Venireperson Jeter for cause; (5) failed to object to the State's improper commitment questions; (6) failed to object to the State's stipulation under *Tamez* [as

12

described in the preceding section]; (7) failed to object to a prejudicial jury charge; and (8) failed to object when the judge accepted the State's written stipulation to Petitioner's prior convictions for DWI.

The Sixth Amendment to the United States Constitution guarantees citizens the assistance of counsel in defending against criminal prosecutions. U.S. CONST. amend VI. Sixth Amendment claims based on ineffective assistance of counsel are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced the petitioner's defense. *Id.* at 687-88, 690. The Supreme Court has emphasized that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-89. Counsel is "'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Burt*, 571 U.S. at 22 (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693). A

13

habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Ineffective assistance of counsel claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). When the state court has adjudicated the claims on the merits, a federal court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *See Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen*, 563 U.S. at 190). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standard," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101.

Chris Castanon, Petitioner's trial counsel, responded to Petitioner's allegations in an affidavit filed before the state habeas court. Mr. Castanon attested he filed a motion to suppress, arguing that because Petitioner was not speeding, the DPS Trooper had no reason to initiate the traffic stop, and thus the stop and blood-alcohol evidence should be suppressed. Mr. Castanon further attested he investigated Petitioner's case, including filing pre-trial motions and reviewing discovery; that he thoroughly cross-examined the DPS Trooper, particularly regarding the Trooper's use of the radar; that he did not strike Venireperson Jeter for cause because Mr. Jeter's response to the State's questioning only indicated that Mr. Jeter could follow the law; and that, contrary to Petitioner's allegations, he advocated for Petitioner during his closing arguments. (ECF No. 6-41 at 115-28.) Upon

14

review of the record, the state habeas court found that trial counsel was not ineffective. (*Id.* at 129.)

Regarding Petitioner's argument that Mr. Castanon provided ineffective assistance when he said during closing arguments that Petitioner was probably speeding but didn't know it, it is plausible Mr. Castanon was attempting to gain credibility with the jury by acknowledging certain aspects of the case. *See Clark v. Thaler*, 673 F.3d 410, 427 (5th Cir. 2012) ("acknowledgement of certain aspects of the case can be a proper 'effort to bolster credibility with the jury.'") (quoting *Dowthitt v. Johnson*, 230 F.3d 733, 751 (5th Cir. 2000)). Here, the facts of the case were relatively uncomplicated: Petitioner was pulled over for speeding and then, through a variety of field and blood testing, was found to be intoxicated. There are limited strategies for persuading a jury to find a defendant not guilty of driving while intoxicated on these facts and counsel's attempt to gain credibility with the jury during closing arguments was not deficient performance.

Petitioner next argues Mr. Castanon provided ineffective assistance when he filed his pretrial motions at the last minute—on the Friday before the Monday trial—and failed to suppress the evidence of Petitioner's intoxication based on the allegedly illegal traffic stop. The record shows that Mr. Castanon was not appointed Petitioner's counsel until August 25, 2017. On September 27, 2017, Mr. Castanon represented Petitioner at his third and final plea negotiation in open court, where Petitioner rejected the State's plea offer of forty years imprisonment. Mr. Castanon also requested a continuance at Petitioner's behest, which the Court denied. (ECF No. 6-18.) Mr. Castanon then filed his pretrial motions two days later, on September 29, 2017. (ECF No. 6-11 at 101-40.) Finally,

at the end of the State's case-in-chief, Mr. Castanon asked the trial court to grant the defense's motion to suppress, arguing that Petitioner was not speeding at the time of the traffic stop. The trial court denied the motion, holding that there was probable cause to make the stop based on the radar gun, and that the DPS Trooper was properly trained and qualified to use the radar gun. Further, there was no other car in the vicinity, and the fact that Petitioner's car had oversized tires was not a defense to speeding. (ECF No. 6-20 at 179-80.)

Although Petitioner argues Mr. Castanon should have moved to suppress the stop based on the Trooper allegedly opening Petitioner's car door without his permission, he offers no support for why this would have been a meritorious argument. Petitioner has also failed to rebut the state habeas court's findings with clear and convincing evidence. Based on this record, the Court concludes that the state habeas court's application of *Strickland* to these allegations was not unreasonable.

Petitioner next argues Mr. Castanon provided ineffective assistance when he failed to strike Venireperson Jeter for cause. As noted above, the issue of juror bias is a factual finding. *Virgil*, 446 F.3d at 610 n.52. Here, Mr. Castanon attested that Mr. Jeter's statement, "Apparently, that's where we're headed," evinced Jeter's understanding of the law rather than showing bias. The state habeas court specifically found trial counsel was not ineffective and Petitioner's conclusory statements to the contrary are insufficient to rebut the state court's factual findings. *See United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) (conclusory allegations are insufficient to raise a cognizable claim of

ineffective assistance of counsel). Accordingly, the state habeas court's application of *Strickland* to this claim was not unreasonable and it is denied.

Finally, Petitioner argues Mr. Castanon provided ineffective assistance when he failed to object to the State's stipulation under *Tamez*; failed to object when the trial court accepted the *Tamez* stipulation; and failed to object to an allegedly prejudicial jury charge. Petitioner does not specifically allege how the jury charge was prejudicial, and again, his conclusory allegations are insufficient to raise a cognizable ineffective-assistance claim. *See id.* Further, although Petitioner argues Mr. Castanon's failure to object to the *Tamez* stipulation resulted in the admittance of prejudicial evidence, i.e. his prior DWI convictions, the holding in *Tamez* aims to do the opposite: so long as a defendant stipulates to the convictions needed to obtain jurisdiction over the charged offense, the State is not permitted to read or prove any other prior convictions during their case-in-chief "as they are without probative value and can serve only to improperly prove the defendant's 'bad character' and inflame the jury's prejudice." *Tamez*, 11 S.W.3d at 202-03. The *Tamez* stipulation was for Petitioner's benefit, not the State's, and Mr. Castanon's performance was not ineffective, nor was Petitioner prejudiced, when Mr. Castanon did not object to the stipulation. The state habeas court's application of *Strickland* to this claim was not unreasonable, and Petitioner's claim is denied.

*b. Ineffective Assistance of Appellate Counsel.* In Petitioner's fifth claim for relief, he argues his appellate counsel, M. McClendon, provided ineffective assistance when counsel filed an *Anders* brief on appeal, stating there were no meritorious issues on appeal.

17

A criminal defendant is constitutionally entitled to effective assistance of appellate counsel when he has a right to appeal under state law. *Evitts v. Lucey*, 469 U.S. 387, 397 (1985); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). The *Strickland* standard for proving ineffective assistance of counsel applies equally to both trial and appellate attorneys. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013). To obtain relief, Petitioner must demonstrate that (1) Mr. McClendon's conduct was objectively unreasonable under then-current legal standards, and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of Petitioner's appeal would have been different. *See Smith*, 528 U.S. at 285; *Higgins v. Cain*, 720 F.3d 255, 260-61 (5th Cir. 2013). To demonstrate deficiency, Petitioner must show that "counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Smith*, 528 U.S. at 285. Counsel is not, however, required to "raise every nonfrivolous claim, but rather may select among them in order to maximize the likelihood of success on appeal." *Id.* at 288 (citing *Jones v. Barnes*, 463 U.S. 745 (1983)).

On direct appeal, Mr. McClendon filed an *Anders* brief, arguing there were no nonfrivolous matters to appeal, and Petitioner filed a pro se appellate brief. The court of appeals independently reviewed the record and agreed with appellate counsel that "the appeal is without merit and should be dismissed." *Zamagni*, 2018 WL 3763762 at *1. Petitioner argues he was prejudiced by counsel's failure to identify meritorious issues, but the court of appeals agreed with counsel's conclusion and Petitioner has failed to rebut

this conclusion with clear and convincing evidence. Accordingly, the state habeas court's application of *Strickland* to this claim was not unreasonable and it is denied.

4. Trial Court Error (claim 4)

In Petitioner's final claim for relief, he argues the trial court abused its discretion when it denied his motion for a continuance and when it accepted the State's interpretation of *Tamez* which then allowed the prejudicial use of Petitioner's prior DWI convictions throughout the guilt/innocence phase of the trial.

After the third and final plea negotiation, and at Petitioner's behest, Mr. Castanon requested a continuance. The State objected, arguing the case was a simple two-witness cases—one trooper, one chemist—and the facts were simple and direct. The trial court verified that Mr. Castanon had all the discovery, and that Petitioner's previous appointed counsel had also been given all the discovery and went over it with Petitioner. The court also confirmed that the previous appointed counsel had withdrawn based on his relationship with Petitioner becoming "unworkable." Petitioner argued on his behalf that the theory of the defense was that the traffic stop was illegal, and the court noted that the body of law regarding traffic stops was well-developed and Mr. Castanon had all the relevant evidence. The court then announced the case was sent for trial the following Monday. (ECF No. 6-18 at 9-15.)

The trial court's denial of Petitioners motion for continuance justifies federal habeas corpus relief only if it was "error . . . so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause." *Bridge v. Lynaugh*, 838 F.2d 770, 772 (5th Cir. 1988). To obtain relief, Petitioner must show that the trial court's error had

19

a "substantial and injurious effect or influence in determining the jury's verdict." *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

In his rebuttal, Petitioner argues that, because the trial court denied his motion for continuance, Mr. Castanon was unprepared for trial, which resulted in Mr. Castanon's deficient performance and Petitioner's conviction. The Court has already concluded that the state habeas court did not act unreasonably in denying Petitioner's ineffective-assistance claims. Because those allegations underpin this claim, this claim is also denied.

Finally, Petitioner argues the trial court erred in accepting the State's interpretation of *Tamez*, which then allowed the prejudicial use of his prior DWI convictions. As previously explained, it was the trial court's own interpretation of *Tamez*, not the State's, that permitted Petitioner to stipulate to the jurisdictional DWI offenses and prohibited the State from referring to those convictions during its case-in-chief. Again, *Tamez* seeks to protect criminal defendants from convictions based purely on propensity evidence. This claim is denied.

### IV. Certificate of Appealability

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects a habeas petition on procedural grounds without reaching the constitutional claims, "a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Accordingly, the Court will not issue a certificate of appealability.

It is therefore **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED**; and

It is **FURTHER ORDERED** that no certificate of appealability shall issue.

SIGNED this 13th day of December, 2021.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE